153 So. 269
## KELLY v. HANWICK.
### 1 Div. 778.

Supreme Court of Alabama.
Jan. 25, 1934.

Rehearing Denied March 22, 1934.

339

Smith & Johnston, of Mobile, for appellant.

Harry T. Smith & Caffey, of Mobile, for appellee.

340

THOMAS, Justice.

The suit was for damages sustained by plaintiff caused by defendant's automobile, driven by her husband, being overturned, injuring plaintiff who was riding in that car.

At the written request of the plaintiff, the trial court gave the general affirmative instructions in her favor on the question of the agency of the driver of the car—as being that for the defendant. It is insisted, on authority, that the mere relation, or family purpose (alone), is not recognized as creating that agency on which liability may rest—as the relation of master and servant within the rule of respondeat superior. Parker v. Wilson, 179 Ala. 361, 60 So. 150, 43 L. R. A. (N. S.) 87; Armstrong v. Sellers, 182 Ala. 582, 62 So. 28; Erlich v. Heis, 193 Ala. 669, 69 So. 530; Gardiner v. Solomon, 200 Ala. 115, 75 So. 621, L. R. A. 1917F, 380; Feore v. Trammel, 213 Ala. 293, 104 So. 808; Tullis v. Blue, 216 Ala. 577, 114 So. 185; Watson v. Burley, 105 W. Va. 416, 143 S. E. 95, 64 A. L. R. pp. 839, 848, note.

In the case of Hudgens v. Boles, 208 Ala. 67, 68, 93 So. 694, Mr. Justice Sayre for the court said: "On the occasion in question the son was driving the car for himself and his elder sister, though, as he testified, the trip was 'mostly his.' The court has thought the decision in Erlich v. Heis was not in conflict with the rulings in Parker v. Wilson, 179 Ala. 361, 60 So. 150, 43 L. R. A. (N. S.) 87, and Armstrong v. Sellers, 182 Ala. 582, 62 So. 28, later followed in Gardiner v. Solomon, 200 Ala. 115, 75 So. 621, L. R. A. 1917F, 380, and, if it is not, this case was properly submitted to the jury."

And the case of Bradley v. Ashworth, 211 Ala. 395, 396, 100 So. 663, 664, contains the following: "It is suggested on behalf of appellee that this case is determined by the decision in Parker v. Wilson, 179 Ala. 361, 60 So. 150, 43 L. R. A. (N. S.) 87. Appellants, on the other hand, ask the court to adopt the 'family purpose' doctrine, and

thus, in effect, to overrule Parker v. Wilson. There are cases in which it is held that, where the head of a family keeps an automobile for the use and pleasure of his family—and we suppose that, among people of moderate means at least, most automobiles are so intended and kept—the owner is liable for negligence in its operation. The author of 'The Law Applied to Motor Vehicles,' Babbitt (3d Ed.) § 1178, observes that 'this doctrine has strong reasons of convenience and public policy to recommend it, but no basis whatever in the law of agency'—as we held in Parker v. Wilson—'and according to the great weight of authority in this country the owner is not liable on evidence merely that the owner permitted his minor son to operate his car for his own pleasure as it is held that this does not show that the son was the agent of the father acting in the scope of his employment.' Like considerations apply, of course, in the case of other members of the owner's family. The cases so holding, including Gardiner v. Solomon, 200 Ala. 115, 75 So. 621, L. R. A. 1917F, 380; Armstrong v. Sellers, 182 Ala. 582, 62 So. 28; Powers v. Williamson, 189 Ala. 600, 66 So. 585; are collected in the footnote. * * * In Erlich v. Heis, 193 Ala. 669, 69 So. 530, and Hudgens v. Boles, 208 Ala. 67, 93 So. 694, the authority of Parker v. Wilson was conceded." Tullis v. Blue, 216 Ala. 577, 114 So. 185.

There is a rule, or the application of the rule of liability, that should be observed before testing the giving of this charge by the evidence before us: It is that stated in Thomas v. Carter, 218 Ala. 55, 58, 117 So. 634, 635, where the facts were:

"Defendant was driving his automobile from Gadsden to Montgomery. Jewel Thomas was his guest. Plaintiff had occasion to be in Montgomery, and, upon the invitation of defendant and Jewel Thomas, her daughter, went with them. At Calera, defendant said he was tired, and, on Jewel's suggestion, allowed her to drive the car. While she was driving, the car overturned, causing injuries to plaintiff. On her complaint, charging negligence to 'the defendant, who was the owner of said automobile, or the driver of said automobile, who was operating same under the authority of, and with the consent of, defendant,' plaintiff had a verdict for damages. * * *

"The facts heretofore stated appeared in the evidence without contradiction. These facts authorized and required a finding that Jewel Thomas, while driving the car, was the agent of defendant owner—this, because she was driving with the owner's concurrence and approval, and in furtherance of his purpose and undertaking to drive the car from Gadsden to Montgomery. Babbitt, Motor Vehicles (3d Ed.) § 1149."

It is insisted by appellee that the undisputed testimony shows that appellant was the owner of the car in which she was riding as a' guest at the time and place with appellant; that the car was being driven by appellant's husband and in response to the wife's specific request. In this and in the Carter Case, supra, the injured person was riding in the car at the request or invitation of the owner; and in both cases the owner had requested the person driving so to do; and in this case and in the Carter Case, the question of agency of the driver as that of the owner rested upon like circumstances.

■ It appears from the evidence that the husband in this case had previously driven the wife's car, at her request, and sometimes of his own volition; that plaintiff suggested having the party and "invited most of the guests," and that nothing was said before they left Mobile about who should drive; that Mr. Kelly just got in and drove the car from Mobile. The fact that he drove the car on the night of this injury to the place of the entertainment without request did not change the relation existing on the return—that he drove the car at the wife's specific request— and in the return transportation of appellee, she advised Mrs. Kelly that others had requested her to return with them, and Mrs. Kelly requested her not to return with such others in their car, but to return with the appellant in her (the wife's) car with the husband driving at Mrs. Kelly's request.

The plaintiff as a witness in her behalf testified as follows:

"I was riding in the front seat. Mr. and Mrs. Kelly were also on the front seat. I was sitting on the right hand side, and Mrs. Kelly was sitting next to her husband. I do not know how to drive an automobile. I never drove one. I do not know anything about the management of an automobile. I did not have anything at all to do with the operation of the automobile. I did not have any authority or control over Mr. Kelly who was driving the car. Mr. and Mrs. Kelly and I had been down to Mrs. Kelly's summer home at Coden, just about a mile from where the accident happened. * * * I was not paying any attention to the speed of the car at the time. I had not seen anything up to that time to make me fear or think there was any danger. I do not remember when the car

got to the curve at Bayou la Batre. I remember when the car turned over. The brakes were not applied just a few seconds before the car turned over. I remember the car hitting that stone there at Bayou la Batre that I heard these witnesses speak of, that stone structure they called a fountain. The back wheel on the left hand side hit that stone structure. When it hit, it busted (burst) the tire. * * *

"Mrs. Kelly asked me to ride back in that car with them. I had gone down with them. I had other invitations to come back. I had an invitation from the Doody's, Mrs. Doody, and I had an invitation from Mr. Webber. * * *

"When I told her I had been invited by somebody else, she asked me to ride back with her. Mrs. Kelly asked Mr. Kelly to drive the car back. * * *

"I was the one that suggested the party to Mrs. Kelly, and Mrs. Kelly gave me a little assistance. I suggested to Mrs. Kelly having a party down to her house. I invited most of the guests. * * *

"Mr. Kelly drove Mrs. Kelly home. I rode with them lots. Mr. Kelly did not drive the car all of the time when he was along. He would drive some and Mrs. Kelly would drive some. He didn't drive most all of the time. As long as I have been knowing him driving the car, he drove the car and she drove as much as he did, while he was along. I did go out with them numerous times when he drove the car. * * *

"I had ridden with them numerous times when Mr. Kelly was driving the automobile. Mrs. Kelly just asked Mr. Kelly would he drive the car home that evening. She asked him to drive the car home. Most of the time he just got into the car and drove it without being asked, but not all of the time. He got in the car and drove it of his own accord. I was sitting on the right hand side, on the front seat, of the automobile, with Mr. and Mrs. Kelly. I was just sitting there like we always did any other time. I was awake and talking to Mr. and Mrs. Kelly. There was nothing about the way the car was being driven that made me think it was dangerous.

"The witness was asked the following question:

" 'You approved of the manner in which it was being driven?'

"The plaintiff objected to the question as to whether the witness approved or disapproved. The Court sustained the objection, to which ruling the defendant then and there duly and legally excepted.

"The witness, continuing, testified:

"I did not make any complaint about the way the car was being driven. I have never driven a car, but I have ridden a great deal in cars, and I have sat on the front seat, as I did on this occasion. No, I never look at the speedometer.

"The witness was asked the following question:

" 'You never looked at a speedometer in your life sitting on the front seat?' * * *

"I never did notice the speedometer on previous occasions. At the time of the accident I could not say just how the car was going. I could not tell whether it was going fast or slow at the time of the accident. At the time of the accident I could not say just how fast Mr. Kelly was driving. I haven't any idea about the speed at all. I could not say it was excessively fast, I do not know just how fast he was driving."

Mrs. Kelly, as a witness for the defendant, testified that she owned the car and that her husband had access thereto; that she and her husband often went places together in this automobile; that the husband frequently drove the car when she and guests of the family were therein; that plaintiff had been out with them on previous occasions; that they were together about two or three times a month in this automobile on parties and entertainments when Mr. Kelly drove the car; that she "did not exercise any control or dominion" over her husband on this evening when the accident happened while he was driving the car; that Miss Hanwick suggested having a party at her house on this occasion; that she asked a few guests and Miss Hanwick asked a few, but she supposed it was Miss Hanwick's party; that everybody helped to furnish the refreshments.

The witness was then asked the following question: "What was said, if anything, between you and Mr. Kelly about your driving the car home that night?" To which she replied: "I think that he asked me to drive, and I told him no, for him to drive."

The witness was further asked: "He asked you if you wanted to drive?" And replied: "Yes, and I said: 'No, you drive.'"

The witness continuing, testified: "I had noticed nothing about my husband's driving before the car began to skid. Before he put on the brakes and the car began to skid, I had seen nothing usual or unusual about it."

We are of opinion that the foregoing coupled with the ownership of the car by the defendant, her presence therein and invitation to the guest, her request to her husband that he drive her and plaintiff home, and with which request he complied, constituted the evidence that was undisputed as to the relationship of agency between the appellant-owner and the husband-driver, and was within the rule of respondeat superior. There was no error in giving, at plaintiff's request, general affirmative instructions as to agency.

We need not consider the refusal of other charges requested by defendant, dealing only with the issue of agency to which the court had correctly given the affirmative charge against the defendant. Stephens v. Walker, 217 Ala. 466, 117 So. 22; Loper v. E. W. Gates Lumber Co., 210 Ala. 512, 98 So. 722; Hambaugh v. McGraw et al., 212 Ala. 550, 103 So. 646; Bienville Water Supply Co. v. City of Mobile, 125 Ala. 178, 27 So. 781.

However, we may again indicate, at this point, that the court had given at defendant's request written instruction (A), "that the fact that the automobile belonged to Mrs. Kelly is not sufficient by itself to make her responsible for the acts of Mr. Kelly in driving the car"; that the court gave at the request of plaintiff charge 6, as follows: "In explanation of charge 'A' given at the request of Defendant, the Court charges the jury that while the fact that the automobile belonged to Mrs. Kelly is not sufficient by itself to make her responsible for the acts of Mr. Kelly in driving the car, the fact that Mrs. Kelly authorized Mr. Kelly to drive her car, in which she was then riding, is sufficient to make her responsible for his negligent acts in the operation of said automobile." In this there was no reversible error or injury, as it deals with an issue to which the court had charged, as we will indicate. The giving of charge 6, explanatory of charge (A), did not amount to the "even so" charge discussed in Manistee Mill Co. et al. v. Hobdy, 165 Ala. 411, 51 So. 871, 138 Am. St. Rep. 73. It did not have the effect of taking from the jury the defense on the question of negligence vel non in the operation of said automobile; was not the assumption as a fact or existence of negligent operation of the car; nor was it the expression of opinion or belief of the court that there was negligent operation of the car at the time and place in question. The question of negligent operation was for the jury under the evidence adduced, and the jury were so instructed by the court in defendant's given charges 6 and 19. Payne, Director General v. James, 207 Ala. 134, 91 So. 801; Bradley v. Powers, 214 Ala. 122, 106 So. 799; Sullivan v. Miller, 224 Ala. 395, 140 So. 606; Western Steel Car & Foundry Co. v. Cunningham, 158 Ala. 369, 48 So. 109; Miller v. State, 107 Ala. 40, 19 So. 37.

There was no error in declining to give defendant's requested general affirmative charge; this is shown by the locus in quo, the dangerous curve, the driving at a dangerous rate of speed, and that on the application of the brakes, the car continued or skidded down the highway and across the curve, crashing into the fountain beside the roadway. The evidence does not indicate, or fails to indicate, that there were obstructions or defects in the roadway or in the mechanism of the car which caused the result. These circumstances disclosed or warranted the inference by the jury of negligent operation of the car immediately before and at the time and place of the accident. In Baker v. Baker, 220 Ala. 201, 203, 124 So. 740, 742, is the statement: "In the absence of obstructions, defect in the road or car, or other supervening cause, the wreck of a car under the circumstances disclosed readily warrants an inference of negligence in operation."

And in Langley Bus Co. v. Messer, 222 Ala. 533, 535, 133 So. 287, 289, the court observed: "The rule applicable is, when the plaintiff adduced evidence showing the fact of the casualty, and the attendant circumstances, that it was caused by the defendant's bus operated and in charge of the defendant's agent or servant, and is such as, in the ordinary course of things, does not happen, without negligence, this was sufficient, prima facie, to shift to the defendant the burden of going forward with the evidence—res ipsa loquitur."

The testimony of plaintiff was that she had never driven a car; did not notice the speed of this car on this or on previous occasions when riding therein; had no idea about a "car's speed at all"; did not know how he was driving; and did not know the car was approaching or that they "were near the curve." She is not brought within the rule of due care that imposed any duty upon her to warn or restrain the driver. Morgan-Hill Paving Co. v. Fonville, 218 Ala. 566, 576, 119 So. 610; Birmingham Southern R. Co. v. Harrison, 203 Ala. 284, 82 So. 534; Thomas v. Carter, 218 Ala. 55, 117 So. 634.

The "mere fact" charge, No. 20, refused to defendant, is not sufficient for reversal; it does not correctly hypothesize all the material facts that are shown by the evidence. The undisputed facts show that Mrs. Kelly

specifically requested and invited plaintiff to make the return trip in her (Mrs. Kelly's) car as her guest, rather than return with the other parties named by the guest to the defendant; that in response to such invitation and request plaintiff did so attempt to return with defendant, and defendant undertook to transport plaintiff as her guest, and in so doing expressly requested and authorized defendant's husband to drive the car, and in his attempted compliance the injury occurred. This, under the law, was the creation of agency in the line of duty and within the rule of liability. Thomas v. Carter, 218 Ala. 55, 117 So. 634.

Neither the mere fact that each of the parties was on his return from a party or pleasure trip at defendant's suburban place and that the plaintiff was invited by defendant to return as a guest in her car, nor the fact that the driver of the car was the husband of defendant, changed the relation, duty, and presumption of agency (Morgan-Hill Paving Co. v. Fonville, supra) other than stated in the given charges.

This court has held that charges that undertake to instruct that, if the injury was by reason of an unavoidable accident, there could be no recovery, are confusing, misleading, and properly refused. Grauer v. Alabama Great Southern R. Co., 209 Ala. 568, 96 So. 915.

There were exceptions to portions of the general charge challenged in assignments of error Nos. 22 to 26, inclusive. As to such instructions there is nothing for decision, for that, when the full instructions and actions of the court as to these charges and instructions given and covered by such assignments are considered, they were withdrawn by the court and a due and proper instruction given. The record as to this has been examined by the court, and no reversible error found.

There was no reversible error in the instructions given as to the burden of proof. The court said on the subject: "To this complaint, the defendant, Margaret Kelly, interposes three pleas,—that is the answer, or her defense. *The first is called the general issue, which denies the truthfulness of the material allegations of the complaint, and in that aspect the burden is on the plaintiff to reasonably satisfy you from the evidence of the truthfulness of those material allegations.*" (Italics supplied.) This placed the proper burden upon the plaintiff under the general issue, and when that burden was discharged by the evidence, instructed under

either of the special pleas of contributory negligence; that is, the foregoing instruction was immediately followed by the further instruction that: "Pleas 4 and 6 set up, first, that the plaintiff assumed the responsibility and was guilty of contributory negligence, in that she had driven on previous occasions with Edward A. Kelly and knew his method of operating the car, and that on this particular occasion had ridden with him on this highway about two miles from the place of the accident, and that she contributed to the negligence by not warning, when the car was running at this speed, Edward A. Kelly, who was operating the car, and thereby this contribution on her part contributed proximately to the injuries which she claims as damages in this case. Each one of those pleas sets up contributory negligence. Now, the burden is on the defendant to prove the material allegations of those two special pleas, Plea 4 and Plea 6, and the evidence must reasonably satisfy you that she has borne this burden before you can find your verdict for the defendant."

The exception taken to the last-quoted clause was not error to reverse, and if it was misleading, the defendant requested and had given special or explanatory charges, and the court further instructed: "Now, gentlemen, if the evidence reasonably satisfies you that the plaintiff has borne the burden imposed on her by the law that she is entitled to recover damages, the form of your verdict would be: 'We, The Jury, find for the plaintiff, and assess her damages at $——' so much. If you believe from the evidence that under Pleas 4 and 6, contributory negligence, that this plaintiff contributed in the remotest degree in negligence that caused the injuries, the proximate injuries, which she claims to have suffered, it is your duty to bring in a verdict for the defendant."

Continuing the oral charge, the court said as to the pleas: " 'Gentlemen, revising my oral instructions to you, if the evidence reasonably satisfies you that the plaintiff has borne the burden in proving to your reasonable satisfaction the truthfulness of the material allegations in her complaint, then your verdict should be for the plaintiff. The special pleas filed in this case for pleas 4 and 5 setting up contributory negligence. In the event you find that the plaintiff has *not* reasonably satisfied you as to the truthfulness of the allegations of her complaint, then, if you find that the defendant has borne the burden as set up in either one of her special pleas, your verdict should be for the defendant, on whatever plea the evidence states that she has

borne the burden as required, and in that event your verdict should be for the defendant under whichever plea you are reasonably satisfied she has proven the truth thereof.'" (Italics supplied.)

The court withdrew the latter instructions and called upon respective counsel for requested instructions on the burden of proof and going forward with the evidence. The defendant's counsel reserved an exception and moved for a mistrial, which motion was overruled.

Plaintiff's counsel prepared, and the court adopted and gave, the following instruction to the jury: "The Court instructs you on that point, that the evidence is undisputed, that is, it is not a jury question for you, which covers the portion of the charge which the Court now withdraws and in explanation and correction of that portion just withdrawn, the Court instructs you that agency of Edward A. Kelly at the time the accident occurred is one of the material allegations of the complaint. There are three counts in the complaint and the Court instructs you that the burden is on the plaintiff to reasonably satisfy you as to the truthfulness of either one of the three counts in the complaint before you can bring in a verdict for the plaintiff, and if you are reasonably satisfied from the evidence that the plaintiff has borne this burden in reasonably satisfying you as to the truthfulness of one of the three counts, at that stage the burden is then shifted on the defendant to prove one of her three special pleas of contributory negligence. If you believe the evidence and are reasonably satisfied that the defendant has borne the burden, when it has so shifted on her to your reasonable satisfaction, then your verdict should be for the defendant, if she reasonably satisfies you as to the truthfulness of any one of her special pleas."

And thereafter the court in continuation of the oral charge said to the jury: "'In event the plaintiff bears the burden of reasonably satisfying you as to the truthfulness of the material allegations of the complaint, then there is no burden on the defendant, your verdict should be for the plaintiff, but if the plaintiff does reasonably satisfy you as to the truthfulness of the material allegations of the complaint, and the defendant after the burden is so shifted, reasonably satisfies you of the truthfulness of either one of the special pleas interposed by the defendant, then your verdict should be for the defendant.'"

This charge was in one sentence, and defendant excepted to the portion of this sentence or statement of the court to the jury which reads: "'In event the plaintiff bears the burden of reasonably satisfying you as to the truthfulness of the material allegations of the complaint, then there is no burden on the defendant, your verdict should be for the plaintiff.'"

■■■■ The court then instructed the jury that the evidence was without dispute as to Mr. Kelly's agency for defendant, and exception was reserved. The defendant requested, and had given, written charges (B), 6, 10, and 19, which charges ignored the proximate connection between his alleged negligence and her injury. However, the refusal of charges 21, 22, and 23 was without error. These charges disregarded the necessity of proving the facts pleaded as contributory negligence. They were not in due regard or conformity to the allegations of all of the facts pleaded as to contributory negligence proximately resulting in injury. As counsel observes, charges (B) and 10 ignored the proximate connection between the plaintiff's alleged negligence and her injury, and failed to limit the negligence available upon a plea of contributory negligence to *such negligence as was alleged in the pleas;* that "these considerations became apparent to the Court in passing upon the other charges of contributory negligence," which were properly refused in that they ignored, as we have stated, "the necessity of a proximate relation between contributory negligence and injury," and sought to extend the right of defendant to defeat the cause of action on account of contributory negligence without regard to the allegations of the pleas upon the subject. We are not of opinion the court committed error in refusing defendant's charges Nos. 21, 22, and 23; they ignore the necessity of proving the allegations of the pleas. Moreover, charge 22 contained the words, "believe from the evidence," and did not require "reasonable satisfaction," and for this reason was properly refused. Ex parte State ex rel. Attorney General (Bush v. State), 211 Ala. 1, 100 So. 312; Birmingham Belt R. Co. v. Nelson, 216 Ala. 149, 112 So. 422.

■■■ Charge No. 12, refused at defendant's request, may be condemned for the use of the words, *"negligence contributes to her injuries";* the injury must be the *proximate and not the remote* result of the negligence pleaded. Dudley v. Alabama Utilities Service Co., 225 Ala. 531, 144 So. 5, and authorities.

■■■ The fact that the court entertained conflicting views during the progress of the trial as to the effect of the evidence as to the

agency of the driver, and that the general affirmative charge was finally given the plaintiff on the issue of agency, was no cause for a mistrial.

■ It was the court's duty to rule and charge as to the final conclusion of the proper instruction to be given. The situation was not changed, as to the motion for a mistrial, by the fact that the court had indorsed given on defendant's charges, without submitting them to the jury, on the question of agency of Kelly, the driver; this did not make them the instructions of the court until they were duly presented to the jury as provided by law, after the conclusion of the general charge.

In section 9509 of the Code, it is provided: "The court shall after the conclusion of his charge to the jury read such written charges as he has given for the parties in a clear and audible voice, saying to the jury, 'these are instructions given you by the court at the request of the plaintiff or defendant, as the case may be, and are correct statements of the law to be taken by you in connection with what has already been said to you.'"

■ The right of change by the court, in a proper case, may be made, although the facts stated or hypothesized in such charges had been argued by counsel to the jury.

■ The fact that the court corrected an error in indorsing the charge as given—submitting to the jury the question of the agency of the driver—did not warrant the taking of the cause from the jury. The court had the right to change, in the last instance, the law as understood to apply to the evidence. The adverse party was not responsible for the necessity for the change from instruction indorsed and not given, to that which the court gave the jury on the question of the driver's agency. The matter is not different by reason of the argument of counsel based on the assumption that the requested written charges would be given. It was merely based on the expectation that the court would so instruct.

■ There was no error in declining defendant's question to plaintiff; she detailed the facts, as we have indicated above. It was for the jury to draw the conclusion of approval on that occasion, if such there was, and she may not on the trial state the undisclosed mental operation of that witness. Fuller v. Whitlock, 99 Ala. 411, 13 So. 80.

■ The defendant, who was testifying as a witness in her own behalf, was allowed to state she had long been, and was then, on friendly terms with the plaintiff. Whether this evidence was competent or not, the objection to the same came too late, as the witness had answered the same before the objection was made.

■ The witness Sprinkles stated the facts that constituted the immediate and impending danger to the car and its occupants, and witnessed as a bystander, immediately before the accident and injury. This spontaneous warning uttered as the car rushed on to the crash was the verification or res ipsa loquitur of the case. Langley Bus Co. v. Messer, 222 Ala. 633, 133 So. 287. The words of the witness were but the spontaneous utterance of one exposed to the common dangers of the time, place and circumstances—a part of the res gestæ of the accident and injury. In Birmingham Macaroni Co. v. Tadrick, 205 Ala. 540, 542, 88 So. 858, 860, it was said: "It is next most strenuously insisted that the declaration of Stamps, as testified to by witnesses for the plaintiff, was illegal and mere hearsay, and therefore should not have been admitted. Counsel for appellant, however, argue the question upon the theory that the difficulty occurred upstairs, and could not have been seen by Stamps, and he was not a bystander, and therefore his declaration was but a mere statement made by a third party after the difficulty, and in any event but a mere threat as to what witness would do upon the happening of a certain contingency. While the difficulty had its beginning upstairs, yet, according to the theory of the plaintiff, she was running to escape both Mrs. Maxwell and Serio, and as she reached the stairway Serio still threatened that if she did not stop her cries for help he would push her down the steps, and that she ran down the stairs with Serio following her. From the standpoint of the defendant, Serio's intentions were entirely innocent, and he meant no harm to the plaintiff as he followed her down the stairs; but, according to the plaintiff's theory, it was but a continuation of the difficulty, and the insistence is that the jury could infer the declaration of Stamps caused Serio to stop in his pursuit of the plaintiff, and thereby put an end to the continued assault. Upon this theory, therefore, the declaration of Stamps was admissible as a spontaneous utterance on the part of a bystander, tending to illustrate, explain, or characterize to some extent the act of Serio, and was admissible as a part of the res gestæ. Mobile & Montgomery Ry. Co. v. Ashcraft, 48 Ala. 15; Dismukes v. State, 83 Ala. 287, 3 So. 671; Johnson v. State, 102 Ala. 1, 16 So. 99; Glass v. State, 147 Ala. 50, 41 So.

727; Hartnett v. McMahan, 168 Mass. 3, 46 N. E. 392; 3 Wig. on Ev. § 1745 et seq.; Ala. City, G. & A. Ry. v. Heald, 178 Ala. 636, 59 So. 461." Shirley v. State, 144 Ala. 35, 41, 40 So. 269; Hall v. State, 11 Ala. App. 95, 98, 65 So. 427.

See, also, Johns Undertaking Co. v. Hess-Strickland Transfer & Storage Co., 213 Ala. 78, 104 So. 250; Stoudemire v. Davis, 208 Ala. 495, 94 So. 498; C. C. Snyder Cigar & Tobacco Co. v. Stutts, 214 Ala. 132, 107 So. 73; Teague v. Alabama Coca-Cola Bottling Co., 209 Ala. 205, 95 So. 883; 22 C. J. p. 461; Field v. North Coast Transp. Co., 164 Wash. 123, 2 P.(2d) 672, 76 A. L. R. 1114, 1126, note 1129, 1131.

Moreover, the defendant assigned no grounds for her objection. The court was not required to search for grounds on or by which to test the objection of defendant.

The defendant was not permitted to answer the question: "Now, when your husband was driving the car [previous occasions had been adverted to], did you give him any instructions what to do?" Yet she was permitted to say: "I did not exercise any control or dominion over my husband *on this evening when the accident happened while he was driving the car.*" (Italics supplied.) In this action of the court there was no error.

The motion for a new trial, based on matters we have discussed, was overruled without error.

The judgment of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and GARDNER, BOULDIN, FOSTER, and KNIGHT, JJ., concur.

BROWN, Justice (dissenting).

The testimony of the witness Robert Sprinkles shows that what he said and did shortly preceding the accident was before he saw the approaching automobile. To quote his testimony:

"I heard the car coming before they got in sight. I moved when I heard it."

The following proceedings were then had:

"Q. Did you make any remarks? A. Yes, sir, I told the boys that was sitting there with me—

"Mr. H. H. Smith: I object to any remark he may have made.

"Sustained.

"Mr. H. T. Smith: I expect to show *he heard the car coming* and he made the statement if the car came around the curve at that speed, and running—

"The Court: I will withdraw my ruling, and let you ask the question.

"Mr. H. H. Smith: The Defendant excepts.

"Q. What remark did you make? A. I told the boys we had better move, that that car could not make that curve at that speed.

"Mr. H. H. Smith: I move to exclude the answer of the witness on the grounds that it is irrelevant, incompetent and immaterial, *and hearsay.*

"Motion refused. Exception." (Italics supplied.)

This was no part of the transaction under investigation, but the mere declarations of a bystander in no way connected therewith, and tended to illustrate nothing more than the feeling and deliberate judgment of the declarant as to the situation, and was mere hearsay. Alabama City, G. & A. Ry. Co. v. Heald et al., 178 Ala. 636, 639, 59 So. 461; Konidaris v. Burgess, 223 Ala. 512, 137 So. 303; Bessierre v. Alabama City G. & A. R. R. Co., 179 Ala. 317, 60 So. 82; Birmingham & A. Ry. Co. v. Campbell, 203 Ala. 296, 82 So. 546.

To bring the acts and declarations of a third person or bystander, who is in no way connected with the transaction, within the res gestæ, "There must be no fair opportunity for the will of the speaker to mould or modify them. His will must have become and remained dormant, so far as any deliberation in concocting matter for speech or selecting words is concerned. * * * His declarations must be the utterance of human nature, of the genus homo, rather than of the individual. Only an oath can guarantee individual veracity; but spontaneous impulse may be a sufficient sanction for the speech of man, as such, man as distinguished from this or that peculiar man. True, the verbal deliverance in each instance is that of an individual person; but if the state of his mind be such that his individuality is for the time being suppressed and silenced, so that he utters the voice of humanity rather than of himself, what he says is regarded by the law as in some degree trustworthy." Travelers' Insurance Company v. Sheppard, 85 Ga. 751, 776–777, 12 S. E. 18, 27; Alabama City, G. & A. Ry. Co. v. Heald et al., supra; Bessierre v. Alabama City G. & A. R. R. Co., supra; Harbour v. State, 140 Ala. 103, 37 So. 330. I am therefore of opinion that the court erred in admitting this testimony.

I am further of opinion that under the facts of this case the court erred in overruling the

motion to exclude the testimony going to show that notwithstanding this lawsuit the plaintiff and defendant were on friendly terms. The sole effect of this testimony was to give the jury to understand that some one other than the defendant was to pay the damages, if any were recovered.

I am further of opinion that the question of agency on the part of Kelly was one of fact for the jury, and not of law for the court.

I am further of opinion that special charge G, given at plaintiff's request, assumes negligence on the part of Kelly, and when taken with the oral charge amounted to the affirmative charge for plaintiff.

Much might be said in criticism of the oral charge of the court, but further discussion would be of no avail. I think the judgment should be reversed, and therefore respectfully dissent.